## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JASON A. ROMAN,
     *Plaintiff*,

     v.                                Case No. 3:22-CV-911 (SVN)

ANGEL QUIROS *et al.*,
     *Defendants*.

## <u>INITIAL REVIEW ORDER</u>

Plaintiff Jason A. Roman, who is currently incarcerated in the Connecticut Department of Correction ("DOC"), filed this action *pro se* pursuant to 42 U.S.C. § 1983 against fifteen defendants. Plaintiff originally asserted claims regarding his confinement and treatment at three correctional facilities. On August 31, 2022, the Court (Merriam, J.) dismissed Plaintiff's initial complaint, which consisted of twelve pages plus 101 pages of exhibits, as failing to comply with the requirement in Federal Rule of Civil Procedure 8 that a complaint contain a short and plain statement giving a defendant fair notice of the claim against them, and as improperly joining unrelated claims against multiple defendants. *See* ECF No. 14. The Court permitted Plaintiff to file an amended complaint to correct the identified deficiencies.

Plaintiff was directed to "describe the personal involvement of each defendant in the alleged constitutional violation. For any person named as a defendant in the Amended Complaint, plaintiff must describe what that defendant *personally* did that violates plaintiff's constitutional rights." *Id.* at 15. Although Plaintiff was permitted to append exhibits to his amended complaint, he was specifically prohibited from "attach[ing] documents and refer[ring] the Court's attention to those documents as the basis for his claims in this case, in place of actually making factual allegations." *Id.* at 16.

On December 22, 2022, Plaintiff filed his amended complaint naming nine defendants: DOC Commissioner Angel Quiros; Warden Jesus Guaddarrama of Osborn Correctional Institution ("Osborn"); Deputy Warden Moore of Osborn; Captain Valentin, Director of Operations at Osborn; DOC Medical Administrator Colleen Gallagher; DOC Medical Provider Akina Richard; DOC Nurse Hollie; and Dr. Lu Jun and Dr. Marti Rothe, both from UConn Health's Dermatology Department. He asserts claims for deliberate indifference primarily to his medical needs and challenges his conditions of confinement at Osborn.[1] Plaintiff seeks damages as well as declaratory and injunctive relief from all Defendants in their individual and official capacities.

For the reasons described below, Plaintiff's amended complaint will be allowed to proceed to service only for a Fourteenth Amendment substantive due process claim relating to an alleged invasion of medical privacy by Defendant Richard and a Fourth Amendment claim based on an alleged violation of bodily privacy against Defendant Hollie.

## I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review civil complaints filed by prisoners and dismiss any portion of a complaint that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's name shows that Plaintiff was sentenced on July 7, 2017, and is now housed at MacDougall-Walker Correctional Institution. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=304794 (last visited Apr. 28, 2023).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even where a plaintiff is proceeding *pro se*, the Court may not

"invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## II.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the amended complaint, but summarizes the facts to provide context to this initial review.  The facts set forth in the amended complaint, and summarized below, are presumed to be true for purposes of initial review.

In his amended complaint, Plaintiff includes both general allegations regarding his health issues without reference to any Defendant and facts purportedly relating to individual Defendants. Following the statements regarding each Defendant, Plaintiff refers the Court to exhibits attached to his amended complaint.

### A.    Plaintiff's General Health

Plaintiff was a sentenced inmate at the time of the incidents underlying this action.  *See* Am. Compl., ECF No. 27, at 1.  He has been diagnosed with folliculitis, a chronic skin condition. *Id.* at 2.  The condition, which can be passed between persons, is very painful and affects Plaintiff's daily activities, including sleeping, showering, exercising, and shaving.  *Id.*  Correctional medical providers emailed photographs of Plaintiff's body and face to dermatologists at UConn.  *Id.*  In attempting to follow directions from the dermatologists, the medical providers used an improper course of treatment that resulted in Plaintiff's hospitalization.  *Id.*  Some doctors have noted that Plaintiff's condition is contagious and ordered Plaintiff to be placed on single cell status.  *Id.*

Plaintiff continues to suffer "unbearable pain" as well as "excessive itching and burning from irritated areas," but his requests to medical providers and administrators go unanswered.  *Id.* at 2–3.  Plaintiff is experiencing excessive stress and anxiety and is depressed due to the lack of

medical treatment.  *Id.*  Plaintiff also suffers from autism spectrum disorder.  *Id.*[2]  Plaintiff contends that, when his personal medical doctors and attorneys sought medical and mental health accommodations on his behalf, he was "faced with extreme conditions of confinement."  *Id.*

Plaintiff further contends that the improper medical treatment he has received has caused him to develop large masses throughout his body.  *Id.*  He has a mass growing on his collarbone and into his throat.  *Id.*  When he touches the mass, he "feels a sensation in his brain and gets dizzy."  *Id.*  Plaintiff has another mass growing on the right side of his neck, possibly a lymph node.  *Id.*  The masses are growing in size and are not being treated.  *Id.* at 4.  The masses are painful and cause Plaintiff stress as he thinks they may be cancerous.  *Id.*

B.  Individual Defendants

Plaintiff sets forth the following allegations regarding the individual Defendants he names in his amended complaint.

Defendant Warden Guaddarrama has "maintain[ed] a dismissive, cruel, and inhumane position" by impeding Plaintiff's requests for medical relief.  *Id.*

Defendant Captain Valentin did not respond to requests sent to him by Plaintiff, his attorneys, and medical professionals.  *Id.* at 5.  He placed Plaintiff "in a situation with other inmates to have to be ridiculed [and to] have to answer questions of his private medical condition."  *Id.*

Defendant Gallagher denied Plaintiff's administrative remedy appeal seeking a single cell.  *Id.*  She agreed with Defendant Warden Guaddarrama's determination that Plaintiff did not require

---

[2] Plaintiff alleges that he has several mental health disorders, including major depression and panic disorder.  As he names no mental health providers as defendants and includes only sparse, conclusory allegations regarding his mental health treatment, the Court does not consider any claims for mental health treatment to be properly included in this action.

a single cell despite an order from Dr. Sushatari that Plaintiff receive a single cell because his condition was contagious.  *Id.*

Defendant Deputy Warden Moore denied a request Plaintiff sent to him regarding his medical and mental health conditions.  *Id.*

Defendants Richard, Dr. Jun, and Dr. Rothe were Plaintiff's primary health providers while he was in the emergency room.  *Id.* at 6.  Defendant Richard was the DOC medical provider who executed the orders of the dermatologists, Defendants Jun and Rothe, and administered medication without first obtaining a culture or biopsy.  *Id.*  Defendant Richard failed to respond to Plaintiff when his condition worsened before he was taken to the emergency room.  *Id.*  Defendant Richard also provided Plaintiff's medical information to other inmates and correctional officers.  *Id.* Plaintiff generally alleges that these three Defendants subjected him to "cruel and inhumane action."  *Id.*

Defendant Nurse Hollie was a correctional medical provider who arranged all outgoing appointments and interactions with UConn.  *Id.* at 7.  Defendant Hollie was ordered to photograph Plaintiff's condition.  *Id.*  She did so with her cell phone even though departmental rules prohibit employees from having cell phones on their persons while working and taking photos of an inmate. *Id.*  Based on the photographs, Defendants Jun and Rothe ordered medications for Plaintiff without knowing whether this was a correct medical decision.  *Id.*

### III.    PRELIMINARY MATTERS

#### A.    Personal Involvement

First, a plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of

defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §
1983"), *abrogated on other grounds*, *Sandin v. Conner*, 515 U.S. 472 (1995).  This is true with
respect to supervisory officials, as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020)
(a plaintiff must "plead and prove the elements of the underlying constitutional violation directly
against the official without relying on a special test for supervisory liability").

Commissioner Quiros is a supervisory official.  Plaintiff does not mention Commissioner
Quiros other than in the case caption and in his identification of Quiros as the DOC Commissioner.
As Plaintiff fails to allege facts showing that Commissioner Quiros, through his own actions,
violated Plaintiff's constitutional rights, his claims for monetary damages against Commissioner
Quiros are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Additional issues related to the personal involvement of Defendants are addressed below.

B.  Injunctive, Declaratory, and Official Capacity Claims

In addition, Plaintiff seeks various types of injunctive and declaratory relief against
Defendants, including a declaration that Defendants' acts and omissions violated his constitutional
rights and orders requiring Defendants to:  send Plaintiff to independent physicians and provide
all proper care and treatment ordered by those physicians; provide Plaintiff with a single cell
permanently; provide proper mental health care for Plaintiff's conditions; and provide personal
laundry for Plaintiff's clothes.

First, the Court construes Plaintiff's requests for injunctive relief as being directed to
Defendants in their official capacities, as injunctive relief is not available from Defendants in their
individual capacities.  *See Patterson v. Lichtenstein*, No. 3:18-cv-2130 (MPS), 2020 WL 837359,
at *2 (D. Conn. Feb. 20, 2020); *Rosa v. Cook*, No. 3:22-cv-703 (SALM), 2022 WL 2981574, at
*11 (D. Conn. July 28, 2022).  Plaintiff's requests for injunctive relief appear directed at certain

Defendants who are employed by the DOC, rather than those who are employed by UConn Health. More specifically, Plaintiff's claims for such relief appear directed predominantly at Defendants Guaddarrama, Moore, and Valentin—all of whom are officials at Osborn—and Defendants Gallagher and Quiros. Because Plaintiff is no longer housed at Osborn, his requests for injunctive and declaratory relief against Defendants Guaddarrama, Moore, and Valentin are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). To the extent Plaintiff requests injunctive relief against Defendants Quiros and Gallagher in their official capacities, such claims are not moot on account of Plaintiff's transfer from Osborn. These requests, however, bear no relation to the claims the Court is allowing to proceed past initial review. Accordingly, Plaintiff's claims against Defendants Quiros and Gallagher for injunctive relief are dismissed.

To the extent Plaintiff's requests for declaratory relief can be construed as being asserted against Defendants Quiros, Gallagher, Hollie, Richard, Jun, and Rothe, the Defendants who are not officials at Osborn, such claims are dismissed because Plaintiff seeks only a declaration that his rights were violated in the past. The general rule is that declaratory relief "operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). Thus, declarations that a defendant "violated federal law in the past" are prohibited. *Green v. Mansour*, 474 U.S. 64, 74 (1985). Because Plaintiff seeks only declarations that Defendants violated his rights in the past, his requests for declaratory relief are dismissed.

Further, any claims based on constitutional violations for money damages against Defendants, all of whom are state employees, in their official capacities, are dismissed as barred

by the Eleventh Amendment pursuant to 28 U.S.C. § 1915A(b)(2). *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any Defendants other than Defendant Quiros for damages in their individual capacities.

## IV.    EIGHTH AMENDMENT CLAIMS

As Plaintiff was a sentenced inmate at the time relevant to this action, his claims of deliberate indifference are reviewed under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The standard of "deliberate indifference to a prisoner's serious medical needs" includes both subjective and objective components. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702, and *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* at 184.

The objective component requires the plaintiff to demonstrate that he had a sufficiently serious "medical need," in other words, a "serious illness or injury resulting in the infliction of unnecessary pain and suffering." *Id.* at 183–84 (citing *Estelle*, 429 U.S. at 105). In addition, the subjective component requires the plaintiff to demonstrate that the prison official's actions were

more than "an inadvertent failure to provide adequate medical care[.]" *Id.* (citing *Estelle*, 419 U.S. at 105–06). *See also Chance*, 143 F.3d at 703 (explaining that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim"). Rather, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety," which is "a state of mind equivalent to the familiar standard of recklessness as used in criminal law." *Smith*, 316 F.3d at 184 (internal quotation marks omitted) (quoting *Chance*, 143 F.3d at 702, and *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (per curiam)). Although "'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Plaintiff alleges that his folliculitis affects his daily activities, causes severe pain, and has caused "masses" on his neck and chest. He has been seen by prison medical staff and dermatologists, but the prescribed treatments have not improved his condition. Based on these allegations, the Court will assume, for purposes of initial review, that Plaintiff has a serious medical need.

The Court next examines whether Plaintiff has adequately alleged, for purposes of initial review, that any of the remaining Defendants acted with a sufficiently culpable state of mind.

### A. Defendants Jun and Rothe

Defendants Jun and Rothe are dermatologists at UConn Health. Based on the allegations of the amended complaint, both Defendants prescribed medication based on photographs of Plaintiff's body taken by Defendant Hollie. Plaintiff contends that the treatment was incorrect

because, due to the fact that the photographs were taken by Defendant Hollie on her cellular phone, Defendants Jun and Rothe ordered medications "without truly knowing whether . . . the course of treatment they were taking was the correct one."  Am. Compl. at 7.

Even construing the amended complaint liberally, the actions Plaintiff attributes to Defendants Jun and Rothe constitute, at most, negligence.  Plaintiff alleges no facts showing that either doctor was subjectively aware of any harmfulness associated their medical decisions.  Thus, as negligence is not cognizable as an Eighth Amendment violation under section 1983, the claims against Drs. Lun and Rothe are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Defendant Richard

Plaintiff alleges that Defendant Richard, a healthcare provider in the DOC, administered the medication prescribed by Defendants Jun and Rothe without first taking a culture or biopsy. Richard, who is not alleged to be a doctor herself, followed the doctors' orders.  Plaintiff alleges no facts suggesting that Richard was subjectively aware that harm would result from carrying out the doctors' orders.  Thus, Plaintiff's claim constitutes, at most, negligence and is dismissed.

Plaintiff also alleges that Richard "would not respond to [him] when his condition worsen[ed]."  Am. Compl. at 6.  In support of this claim, he refers the Court to various inmate requests he submitted that were addressed to Richard.  All the requests were answered, however, by other medical staff.  *See id.* at 29, 32, 34, 36, 38.  As neither Plaintiff's amended complaint nor the attachments thereto suggest that Richard was even aware of his requests, Plaintiff fails to state a plausible deliberate indifference claim against Richard.  Therefore, this claim is also dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C.  Defendants Moore, Guaddarrama, and Gallagher

Plaintiff alleges that Deputy Warden Moore denied his request to be placed in a single cell, which was recommended by a dermatologist who considered Plaintiff's condition contagious. Plaintiff attached a copy of the request to his amended complaint.  *See* Am. Compl. at 17.  The bottom of the request form notes that Plaintiff was examined by another dermatologist who determined that Plaintiff's condition was not, in fact, contagious.  *Id.*

Plaintiff also alleges that Defendant Gallagher affirmed Defendant Guaddarrama's denial of his request under the Americans with Disabilities Act ("ADA") for a single cell.  Plaintiff identifies two exhibits as supporting this claim.  The first is an ADA request for a single cell as an accommodation for Plaintiff's disability, which he identifies as his skin condition, autism, and a learning disability.  *Id.* at 12.  The ADA coordinator approved the request, but Warden Guaddarrama allegedly overrode the decision, stating that folliculitis is not contagious except by skin contact or sharing personal hygiene equipment.  *Id.*  Plaintiff then filed an ADA appeal, which Defendant Gallagher denied.  *Id.* at 16.  She explained that cellmates should not share hygiene items or have skin contact with each other, thereby mooting the contagiousness rationale of the doctor.  *Id.*  She indicated that the doctor would be informed of these facts.  *Id.*

The concern that Plaintiff's condition is contagious is a concern for other inmates who might contract the condition, not for Plaintiff.  Because Plaintiff is not an attorney, he can assert only his own claims.  *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (a person appearing *pro se* must assert a claim personal to him).  Plaintiff alleges no facts suggesting that *he* would be physically harmed by sharing a cell with another inmate, or that he has been physically harmed because Defendants have denied his requests for a single cell.  Thus, Plaintiff fails to state a

plausible claim that denial of a single cell affects his medical condition or violates his constitutional rights.

The claims against Defendants Guaddarrama, Gallagher, and Moore are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

D. Defendant Valentin

Plaintiff alleges that, in response to a request from Plaintiff and letters from Plaintiff's attorneys and medical professionals, Defendant Valentin placed him "in a situation with other inmates to have to be ridiculed [and to] have to answer questions of his private medical condition" and "impeded in [his] relief." Am. Compl. at 5. As support for this conclusory allegation, Plaintiff refers the Court to a request he sent to Defendants Valentin and Guaddarrama on February 19, 2022. *Id.* at 21.

In the request, Plaintiff states that letters were sent to Defendant Guaddarrama from Plaintiff's attorneys and outside physicians seeking an ADA accommodation for Plaintiff based on his medical and mental health conditions. *Id.*[3] Plaintiff also asks what medical staff approved him for a cellmate, and asks Defendant Valentin and other staff "to respond for the actions taken against" him. *Id.* Plaintiff does not explain what those actions were. Plaintiff includes a notation on the exhibit that he did not receive a response.

_____

[3] Although Plaintiff framed his administrative grievances in the context of requests for accommodation under the ADA, he does not appear to advance a claim for violation of the ADA in his amended complaint. His original complaint, which was dismissed, when construed liberally, may have attempted to state a claim for violation of the ADA. *See* ECF No. 1 at 12 ¶ 4 (requesting that the DOC be required "to provide adequate care for my mental health because I'm an American with Disabilities and am not getting proper mental health"). In his amended complaint, however, he has changed the language of this particular request for relief to "order Defendants to provide proper mental health for Plaintiff's conditions such as [autism spectrum disorder] and his learning disabilities etc[.]" Am. Compl. at 8 ¶ F. Given the change in language and removal of the reference to being an "American with Disabilities," the Court concludes that Plaintiff is not attempting to make out an ADA violation in his amended complaint. Even if he were attempting to advance such a claim, though, his allegations concerning his alleged mental health disabilities are far too sparse in the amended complaint to allow such an ADA claim to proceed past initial review.

Plaintiff was previously instructed that he must "describe the personal involvement of each defendant in the alleged violation." ECF No. 14 at 15. Plaintiff alleges only that he sent a request to Defendant Valentin, whose "course of action was to place [him] in a situation" in which other inmates ridicule him and ask him questions about his conditions. Am. Compl. at 5. This conclusory allegation is insufficient to allege Defendant Valentin's personal involvement in any alleged constitutional violation. Plaintiff does not allege any facts showing that Defendant Valentin even received the request; nor does he set forth any actions taken by Defendant Valentin that violated his constitutional rights. Thus, Plaintiff fails to comply with the Court's orders and has not plausibly stated a cognizable claim against Defendant Valentin. The claim against Defendant Valentin is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

## V.     RIGHT TO PRIVACY

Plaintiff alleges that Defendant Richard violated his right to medical privacy under the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). That statute does not, however, create a private right of action and cannot support a claim under section 1983. *See Rodgers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162 (MAD/TWD), 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right to action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim." (citing cases)). Any HIPAA claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff's allegations may, however, be construed as a Fourteenth Amendment claim for violation of the right to privacy. *Rodgers*, 2015 WL 4404788, at *7. The Second Circuit has held that an individual's right to privacy concerning confidential medical information extends to prisoners. *See Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999). A prisoner's right to

14

confidentiality, however, is not absolute.  The interest varies with the underlying condition.  *See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 64 (2d Cir. 2011) ("[T]he interest in the privacy of medical information will vary with the condition.").  Identifying the "strength of the individual interest in privacy never ends the analysis," however, as even "the weakest privacy interests cannot be overridden by totally arbitrary or outright malicious government action." *Hancock v. County of Rensselaer*, 882 F.3d 58, 68 (2d Cir. 2018); *see id.* at 67 ("The strength of a privacy interest *is* relevant to the due process inquiry, but only in service of determining how strong the government's interest must be in order to override it.").  In the context of disclosure of confidential medical information, if such disclosure is not reasonably related to a legitimate penological interest, it may violate the inmate's constitutional right to privacy if the government's behavior was so "arbitrary" as to "shock the conscience."  *Id.* at 66 & n.3; *see also Powell*, 175 F.3d at 112.

Here, Plaintiff alleges that Defendant Richard disclosed his medical condition to other inmates on more than one occasion, and he has provided a signed statement from another inmate describing how Defendant Richard disclosed Plaintiff's folliculitis to the other inmate.  Am. Compl. At 6, 40–43.  As Plaintiff has at least some interest in medical privacy, and because the amended complaint sufficiently alleges, for purposes of initial review, that Defendant Richard intentionally disclosed Plaintiff's medical information to a third party, the Court will allow Plaintiff's Fourteenth Amendment substantive due process claim based on an invasion of medical privacy to proceed against Defendant Richard.

## VI.    USE OF PERSONAL CELL PHONE

Plaintiff alleges that Defendant Hollie used her personal cell phone to take pictures of his rash and send the pictures to the dermatologists.  He contends that correctional staff are prohibited from having cell phones in correctional facilities and taking photos of inmates on their cell phones.

The failure to comply with prison rules or directives, on its own, does not constitute a violation of a federally or constitutionally protected right for purposes of a section 1983 claim. *See Harris v. Taylor*, 441 F. App'x 774, 775 (2d Cir. 2011) (summary order) (failure to comply with prison directive, without more, does not state a claim cognizable under section 1983); *Osuch v. St. John*, No. 3:18cv846(JCH), 2018 WL 5778243, at *4 (D. Conn. Nov. 2, 2018) (noting that "a violation of a state law or regulation, on its own, does not constitute a violation of a federally or constitutionally protected right"); *Fofana v. Bellamy*, No. 9:17-CV-519 (LEK/DJS), 2017 WL 4338971, at *2 (N.D.N.Y. Sept. 29, 2017) ("A § 1983 claim brought in federal court is not the appropriate forum in which to raise violations of prison regulations." (collecting cases)). Therefore, Defendant Hollie's alleged failure to abide by prison regulations cannot proceed.

To the extent Plaintiff may be attempting to allege a Fourth Amendment violation of his bodily privacy in connection with Defendant Hollie's taking of photographs of Plaintiff's body, however, the allegations are sufficient to survive initial review.  Courts assessing an inmate's claim that correctional staff infringed his or her right to bodily privacy must undertake a two-part inquiry: first, the Court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy and, second, the Court must determine whether the prison officials had sufficient justification to intrude on the inmate's Fourth Amendment rights.  *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).  As this case involves an isolated search, rather than a prison regulation or policy, the claimed violation is assessed for reasonableness under four factors:  (1) the scope of

the intrusion; (2) the manner in which it was conducted; (3) the justification for initiating it; and (4) the place in which it was conducted. *Id.* at 62–63.

Here, the Court will assume, without deciding, that Plaintiff has exhibited an actual, subjective expectation of privacy in photographs of his body not being taken with Defendant Hollie's personal cellular phone. As to the four factors relating to reasonableness, Plaintiff has sufficiently alleged, for purposes of initial review, that the intrusion was unreasonable, in that Defendant Hollie, a female, took photographs of Plaintiff, a male, with her personal cellular phone, rather than with any prison-issued camera. While the justification for taking the photographs may have been to assist Plaintiff with diagnosis and treatment of his medical condition, the mere taking of the photographs with a personal cellular phone is suggestive of unreasonableness, at least for purposes of initial review.

The Court will therefore allow Plaintiff's Fourth Amendment claim based on a violation of bodily privacy to proceed against Defendant Hollie.

## VII.    CONCLUSION

Based on the foregoing, Plaintiff's amended complaint is **DISMISSED** except as to Plaintiff's Fourteenth Amendment substantive due process claim based on an invasion of privacy against Defendant Richard in her individual capacity and Plaintiff's Fourth Amendment claim based on a violation of bodily privacy against Defendant Hollie in her individual capacity.

As Plaintiff has already once been given an opportunity to amend his complaint, the Court will not allow another amendment, and orders that the claims against Defendants Richard and Hollie may proceed to service. In their individual capacities, Defendants Richard and Hollie may waive service of a summons by operation of Federal Rule of Civil Procedure 4(d). In order to determine whether Defendants will waive service in their individual capacity, the Clerk shall verify

the current work addresses for Defendants Richard and Hollie with the DOC Office of Legal Affairs, mail waiver of service of process request packets containing the amended complaint and any other required documents to these Defendants at their confirmed addresses by **May 12, 2023**, and report on the status of the waiver requests on the thirty-fifth (35th) day after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant.

The Court will issue a schedule for the case once service is effected upon Defendants Richard and Hollie.  The fact that certain claims are being permitted to proceed past initial review does not preclude the filing of a motion to dismiss by any Defendant for failure to state a claim.

SO ORDERED at Hartford, Connecticut, this 28th day of April 2023.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
United States District Judge